KERR v. McHENEY.

1. DEEDS—OLD AND ILLITERATE MAY DISPOSE OF PROPERTY.
   The old as well as the young may dispose of their property as they see fit, the illiterate as well as the educated.

2. SAME—CANCELLATION OF INSTRUMENTS—COMPETENCY OF GRANTOR.
   In a suit to set aside a deed of a farm by a father to defendant daughter, with whom he made his home, evidence *held*, insufficient to establish that grantor was incompetent to execute the deed.

3. SAME—TRUSTS—EVIDENCE — BURDEN OF PROOF — UNDUE INFLUENCE.
   Evidence *held*, insufficient to establish undue influence, even if plaintiffs' contention is accepted that *quasi*-trust relations existed between grantor and defendant and the burden of proof is upon defendant to show that the transaction was in all respects fair.

4. ESTATES OF DECEDENTS—ACCOUNTING—EVIDENCE—SUFFICIENCY.
   Evidence *held*, insufficient to establish that defendant daughter has any money in her hands belonging to her father's estate.

Appeal from Washtenaw; Sample (George W.), J. Submitted April 26, 1922. (Docket No. 139.) Decided June 5, 1922.

Bill by Hannah Kerr and Peter Morton against Maggie McHeney and another to set aside a deed. From a decree for plaintiffs, defendants appeal. Reversed and bill dismissed.

*Cavanaugh & Burke* (*Henry C. Bogle,* of counsel), for plaintiffs.

*William Henry Gallagher,* for defendants.

McDONALD, J.    Questions of fact alone are involved

---

On undue influence in conveyance or transfer of property in consideration of support of the grantor or a third person, see note in 52 L. R. A. (N. S.) 476.

in this case.   As we reach a different conclusion than did the trial judge, we shall state the facts we are persuaded this record establishes.   Peter Morton, Sr., was the owner of an 80-acre farm in Saline township, Washtenaw county.   He had three children, the plaintiffs and defendant Maggie McHeney.   Hannah was the oldest of the family.   Until her marriage at the age of 17 she worked on the farm, on occasions doing a man's work.   Peter was somewhat dissolute and untrustworthy.   Maggie, the youngest of the family, when married, went to live in Detroit.   Mrs. Morton died July 9, 1911.   The following spring Mr. Morton rented the farm and went to live with Maggie in Detroit.   He lived with her and she cared for him until his death May 4, 1919.   Mr. Morton's farm was not far from Tecumseh and he frequently went there. Such law business as he had was done by Mr. Wood, an attorney living there and who had been following his profession since 1884.   Before that Mr. Wood's father had done his business.   He called on Mr. Wood occasionally for a visit when he had no business to transact.   After going to live with his daughter Maggie, Mr. Morton, so long as his health permitted, made occasional visits to the farm, and when he went there he frequently went to the nearby towns, Saline, Clinton, and Tecumseh.   In 1914, Mr. Morton had Mr. Wood prepare a will for him.   In it he provided that Maggie should be reasonably and liberally paid for her services, and in addition gave her $200 or $300, and divided the balance of his property between his three children, the share of Peter being placed in trust.   In 1916 he made another will making the same provision as to compensation to Maggie, slightly increased her specific bequest, and made the same division of the balance.   In January of 1918, he made another will which contained the provision for compensating Maggie, increased her specific bequest sev-

eral hundred dollars, and divided the balance between his children, but did not place Peter's share in trust. All these wills were drawn by Mr. Wood in his office at Tecumseh. In the fall of 1918, Mr. Morton sent for Mr. Wood to come to Detroit. On November 18th, Mr. Wood went there; he spent practically half a day with Mr. Morton. They visited about old times and Mr. Morton went over fully with Mr. Wood the disposition of his property and was fully advised by Mr. Wood. Mr. Morton was then in a crippled condition. He then well knew his condition and was apprehensive that he would continue a great care until his death. He looked to his daughter Maggie and to no one else for such care. He wanted to compensate her for the care she had rendered and would render in the future. All of this he communicated to Mr. Wood. By his direction Mr. Wood prepared the deed here assailed. It conveyed the farm to Maggie, reserving a life use. Mr. Wood also prepared a paper which was executed by Maggie acknowledging full payment for past services and agreeing to care for her father during the balance of his life, also agreeing to pay his burial expenses if he left insufficient funds, and agreeing to pay her brother and sister each $300 within a year after his death. This was made a lien on the premises. By Mr. Morton's direction the deed was recorded, and likewise by his direction the other paper was kept by Mr. Wood. Both instruments were witnessed by Mr. Wood and Mr. Morton's physician.

This deed is assailed on the usual grounds of mental incapacity and undue influence. There is some testimony coming from members of plaintiffs' families which would have some tendency to sustain plaintiffs' claim although it is of the most meagre sort. The overwhelming weight of the disinterested testimony both from plaintiffs' witnesses and those called by defendants establish his mental competency to execute

the instrument here involved. Mr. Morton was not an educated man; he could neither read nor write. He was about 73 years old when the deed was executed. His physical condition required constant care and attention but it did not affect his mentality. The testimony of the doctor, of Mr. Wood, of neighbors in Detroit, of old neighbors who visited him and of others who knew and saw him is convincing to us that the instrument in question was not the product of an unsound mind. The old as well as the young may dispose of their property as they see fit, the illiterate as well as the educated. This property was the property of Mr. Morton and it was for him to give or to withhold as he saw fit. Plaintiffs have failed to establish the mental incompetency of the deceased.

We are also satisfied that the deed is not the product of undue influence. If we should accept the contention of plaintiffs' counsel that this case falls within the class of cases where the trust relation or *quasi*-trust relation is held to exist, and adopt the rule contended for by them, that the burden is on the defendants to show that the transaction was in all regards fair, a rule of doubtful application to the facts of this case, it would not benefit plaintiffs. Here the grantor had independent advice from his own attorney. He and his attorney went over the matter fully when no one else was present and after it had been decided just what should be done Maggie was called in and advised of the arrangement. She then said to her father:

"Father, anything you want to do with your property is all right with me, you can have a home here as long as you live whether I get a dollar for it or not."

She then left the room and Mr. Wood proceeded to prepare the papers. We are satisfied that there was no influence, due or undue, exercised over deceased to

procure this deed, that it was freely made to compensate the only one of the children who seemed to be willing to furnish a home for deceased in his declining days.

There is some testimony in the record as to the amount of money Mr. Morton had at different times during the last six or eight years of his life. We think there are some duplications in plaintiffs' figures and that their claim of the amount of money he had is too high. He paid the taxes on the farm, bought grass seed for it, had doctor's bills and other personal expenses to pay, and we are not convinced that defendant Maggie has any of her father's money or that she has been paid for her care otherwise than by the deed.

The decree of the circuit court setting aside the deed will be reversed and one here entered dismissing the bill, with costs of both courts to defendant Maggie McHeney.

FELLOWS, C. J., and WIEST, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.